UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

KIRK CORMIER                                    CIVIL ACTION

v.                                              NO. 18-11701

MARRIOTT INTERNATIONAL, et al.                  SECTION "F"

ORDER AND REASONS

Before the Court is Marriott International and the Ritz-Carlton Hotel Company's motion for summary judgment. For the reasons that follow, the motion is GRANTED, in part, as to all claims against Marriott International, and DENIED, in part, as to all claims against the Ritz-Carlton Hotel Company.

**Background**

A hotel guest slipped and fell in the bathroom of his hotel room. This lawsuit followed.

Kirk Cormier's first visit to New Orleans did not go as planned. But it began well enough. Cormier arrived at the Ritz-Carlton Hotel of New Orleans on the afternoon of October 4, 2017. He checked in, took a walk, and bought dinner. He ate in his room, brushed his teeth, and then went to bed. An unremarkable evening. Other than some damp carpeting, he noticed nothing unusual—no leaks or other issues warranting a call to maintenance.

1

The next morning, Cormier went into the bathroom to shower and shave. He pulled the plunger on the sink (so water could collect in the sink bowl), turned the water on, and began to shave. Before he finished shaving, he turned on the shower. He resumed shaving and, when he finished, depressed the plunger on the sink so that the sink bowl could drain. He then stepped into the shower. About fifteen minutes later, he finished showering, dried off, and stepped out of the shower and onto a bath mat. He took one or two steps off of the mat, slipped, and fell on his back. He lay there for several minutes, allegedly in great pain.

Eventually, Cormier dragged himself into the bedroom. As he did so, he noticed water "all around" him. He identified the source as the "gooseneck" pipe beneath the bathroom sink. Now outside the bathroom, Cormier crawled towards the room's phone, hoping to summon help. But the phone did not work. So, he tugged at his bedsheets, causing his cellphone to fall to the floor, within his reach. He called a colleague staying at the hotel, and the colleague called the front desk and reported Cormier's condition.

Emergency medical technicians arrived a few minutes later. Cormier declined a trip to the hospital; he instead rested on the bed in his hotel room, hoping the pain would subside. As he rested, two hotel maintenance technicians arrived to inspect the bathroom. Cormier told them to fill the sink bowl with water and then "see

if it leaks." Although Cormier did not see the technicians test the leak, he heard them say, "Oh, yeah. Big leak."

The room's maintenance history report reflects that this incident generated the first and only complaint of a leak in the bathroom's under-sink pipes. Indeed, a member of the Ritz-Carlton's cleaning and repair crew inspected the room on September 7, 2017, about a month before Cormier's alleged fall. She says she noticed no leak after "inspect[ing] the faucet, wash basin[,] and draining capability of the sink in the bathroom . . . including fully filling the basin with water and unplugging the drain[.]" She insists she would have notified the Ritz-Carlton's engineering department of any leak she discovered.

Cormier sued the Ritz-Carlton and Marriott International for negligence under Civil Code Article 2315. He says they knew or should reasonably have known about the leak in the pipes beneath the sink, which created an unreasonably dangerous condition causing his fall.

Now, the Ritz-Carlton and Marriott International move for summary judgment. They contend that Cormier's negligence claims fail because he cannot prove that they knew or reasonably should have known that the under-sink pipes leaked. Marriott International contends, separately, that it cannot have liability for Cormier's alleged injuries because it did not own, operate, or manage the Ritz-Carlton. Cormier opposes.

I.

Summary judgment is proper if the record discloses no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit." Id. at 248.

If the non-movant will bear the burden of proof at trial, "the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." In re La. Crawfish Producers, 852 F.3d 456, 462 (5th Cir. 2017) (citation omitted).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. Nor do "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation[.]" Brown v. City of Houston, Tex., 337 F.3d 539, 541 (5th Cir. 2003). Ultimately, to avoid summary judgment, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007).

4

In deciding whether a fact issue exists, the Court views the facts and draws all reasonable inferences in the light most favorable to the non-movant. See Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 513 (5th Cir. 2018). The Court "resolve[s] factual controversies in favor of the nonmoving party," but "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

II.

The Ritz-Carlton contends that Cormier's negligence claims fail because he cannot prove that the company knew or should reasonably have known of the leak in the pipes beneath the bathroom sink.

A.

The source of negligence liability in Louisiana is Civil Code Article 2315, which instructs that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." LA. CIV. CODE art. 2315. Courts use a duty-risk approach to decide whether to impose negligence liability. Lemann v. Essen Lane Daiquiris, Inc., 2005-1095, p. 7 (La. 3/10/06); 923 So. 2d 627, 632. To recover under that approach, the plaintiff must prove five elements: (1) the defendants had a duty to conform their conduct to a specific standard; (2) the

defendants' conduct failed to conform to the appropriate standard; (3) the defendants' substandard conduct was cause in fact of the plaintiff's injuries; (4) the defendants' substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. Audler v. CBC Innovis, Inc., 519 F.3d 239, 249 (5th Cir. 2008) (citing Lemann, 923 So. 2d at 633).

A more specific Civil Code provision applies in premises liability cases. See LA. CIV. CODE art. 2317.1. Civil Code Article 2317.1 makes an "owner" or "custodian" of a "thing" liable for damages caused by a "ruin, vice, or defect" in the "thing." See Renwick v. PNK Lake Charles, L.L.C., 901 F.3d 605, 616 (5th Cir. 2018) (citing Bufkin v. Felipe's La., LLC, 2014-0288 (La. 10/15/14); 171 So. 3d 851, 855). To recover under Civil Code Article 2317.1, the plaintiff must prove "(1) that the thing was in the defendant's custody, (2) that the thing contained a defect [that] presented an unreasonable risk of harm to others, (3) that this defective condition caused damage[,] and (4) that the defendant knew or should have known of the defect." Renwick, 901 F.3d at 616 (citation omitted).

The 1996 amendments to Civil Code Article 2317.1 "'effectively eliminated strict liability . . . turning it into a negligence claim.'" Id. (quoting Brumaster v. Plaquemines Parish Gov't, 2007-2432 (La. 5/21/08); 982 So. 2d 795, 799 n.1). So, "there is [now] essentially no difference" between Civil Code

6

Article 2315 and 21317.1 claims. Bd. Of Comm'rs of Se. La. Flood Pr. Auth.-E v. Tenn. Gas Pipeline Co., 850 F.3d 714, 729 (5th Cir. 2017).

B.

The Ritz-Carlton contends that Cormier cannot show that it knew or should reasonably have known of the leak. It invokes two affidavits—one by a repairperson, another by the Ritz-Carlton Hotel of New Orleans' Director of Engineering—establishing: that no leak was discovered during a September 7, 2017 inspection of the sink; and that until Cormier's October 5, 2017 fall, no guest or member of hotel staff had reported a leak in the sink.

Cormier counters that, as an "innkeeper," the Ritz-Carlton Hotel owed him a heightened duty of care. Whether it breached that heightened duty, Cormier continues, is a jury question. The Court agrees.

An "innkeeper" owes a hotel guest "a high degree of care and protection." Kraaz v. La Quinta Motor Inns, Inc., 410 So. 2d 1048, 1053 (La. 1982). This is a "greater than ordinary standard of care[.]" Gregor v. Constitution State Ins. Co., 534 So. 2d 1340, 1343 (La. Ct. App. 1988). Because the Ritz-Carlton is an "innkeeper," it owed Cormier a "high degree of care and protection." Kraaz, 410 So. 2d at 1053; see also Phetteplace v. 415 Rue Dauphine, LLC, 383 F. Supp. 3d 629, 633 (E.D. La. 2019).

7

The Ritz-Carlton does not acknowledge the "heightened" duty it owes its guests. It focuses on the ordinary care standard and insists that it met it. As purported proof, it points to a September 7, 2017 inspection—completed almost one full month before Cormier's alleged fall. It offers no support for the proposition that a monthly maintenance inspection meets the "high degree of care and protection" standard. Kraaz, 410 So. 2d at 1053. And the Court has found none. Based on the parties' submissions, then, it is unclear whether the Ritz-Carlton, exercising a "high degree of care and protection" for Cormier, should reasonably have known of the leak in the pipes beneath the sink.[1]

The Ritz-Carlton has not met its burden of proving that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. On this record, the Court cannot determine whether the Ritz-Carlton breached its duty to provide Cormier a "high degree of care and protection." Kraaz, 410 So. 2d at 1053. A jury will make the determination. See, e.g., Broussard v. State ex rel. Office of State Bldgs., 2012-1238, p. 12 (La. 4/5/13); 113 So. 3d 175, 185.

---

[1] Apparently there is no claim that Cormier's injuries are false or not related to his alleged slip and fall.

III.

Separately, Marriott International contends that it is not liable for Cormier's alleged injuries because it did not own, operate, or manage the Ritz-Carlton. The Court agrees.

Marriott International's contentions find support in the affidavit of Abe Chaney, Director of Engineering for the Ritz-Carlton Hotel of New Orleans. He attests that Marriott International did not "operate" the Ritz-Carlton Hotel, "manage" it, or otherwise "have any responsibility" for building maintenance.

Cormier offers nothing to controvert any of these properly-supported material facts. Besides, he has abandoned his claims against Marriott International by failing to brief them in opposition to summary judgment. See Blackwell v. Laque, 275 F. App'x 363, 366 n.3 (5th Cir. 2008). The Court therefore finds that Marriott International has met its burden of proving that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law.

IV.

Accordingly, IT IS ORDERED: that the motion for summary judgment is GRANTED, in part, as to all claims against Marriott International, and DENIED, in part, as to all claims against the Ritz-Carlton Hotel Company.

New Orleans, Louisiana, November 6, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE